```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| BROWNSTONE SPECIALTY FINANCE, INC., | Civ. No. 16-5412 (NLH/AMD) |
| Plaintiff, | **OPINION** |
| v. | |
| FREEDOM MORTGAGE CORPORATION, | |
| Defendant. | |

**APPEARANCES:**

Paul Castronovo, Esquire
Castronovo & McKinney, LLC
71 Maple Avenue
Morristown, NJ 07960
    *Attorney for Plaintiff Brownstone Specialty Finance*

Matthew A. Green, Esquire
Mathieu J. Shapiro, Esquire
Samantha J. Koopman, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Woodland Falls Corporate Park
200 Lake Drive East, Suite 110
Cherry Hill, NJ 08002
    *Attorneys for Defendant Freedom Mortgage Corporation*

**HILLMAN, District Judge**

    This matter comes before the Court by way of Defendant Freedom Mortgage Corporation's motion [Doc. No. 8] seeking to dismiss Count I of Plaintiff's amended complaint [Doc. No. 5] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  The Court has

considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendant's motion will be granted.

I.  **JURISDICTION**

In this action, Plaintiff asserts claims for allegedly unpaid commissions in violation of the New Jersey Sales Representatives' Rights Act (Count I), N.J. Stat. Ann. §§ 2A:61A-1, et seq., and breach of contract (Count II).  The Court exercises jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and an amount in controversy in excess of $75,000.

Plaintiff Brownstone Specialty Finance, Inc. (hereinafter, "Brownstone" or "Plaintiff") is incorporated in the State of Texas and maintains its principal place of business in Texas. (Pl.'s Am. Compl. [Doc. No. 5], ¶ 1.)  Accordingly, Plaintiff is a citizen of the State of Texas.  Defendant Freedom Mortgage Corporation (hereinafter, "Freedom" or "Defendant") is incorporated in the State of New Jersey and maintains its principal place of business in New Jersey.  (Id. ¶ 2.)  Thus, Defendant is a citizen of the State of New Jersey.  Therefore, complete diversity of citizenship exists between the parties.

The amount in controversy is met because the allegations contained in Plaintiff's amended complaint sufficiently demonstrate that the damages sought are in excess of $75,000, exclusive of interest and costs. Specifically, Brownstone claims damages of approximately $44,667 for allegedly unpaid commissions under the Sales Representatives' Rights Act ("SRRA"), which permits exemplary damages in an amount three times greater than the amount of unpaid commissions and allows for the recovery of all attorney's fees actually and reasonably incurred in bringing such an action. See N.J. Stat. Ann. § 2A:61A-3(a). Plaintiff's initial claim for damages, when multiplied by three, and considered with a potential award for attorney's fees, clearly satisfies the amount in controversy requirement.[1]

## II. BACKGROUND

---

[1] Cf. Thomas v. Nova Se. Univ., 468 F. App'x 98, 100 (3d Cir. 2012) (recognizing that "[w]hether a claim is for less than the jurisdictional amount depends on what damages a plaintiff could recover under state law.") (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993); see also Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc., 245 F. App'x 161, 163 n.2 (3d Cir. 2007) (observing that "when state law provides for the recovery of attorneys' fees by a successful plaintiff, those fees must be considered in calculating the jurisdictional amount in controversy.")

In the amended complaint, Brownstone alleges that in August of 2014 Brownstone began "working for Defendant as a 'Consultant' providing 'commercial loan origination referral services' pursuant to a Services Agreement" between the parties.[2] (Pl.'s Am. Comp. ¶ 5.) Almost two years later, on July 1, 2016, Freedom verbally terminated the parties' Services Agreement. (Id. ¶ 7.) Freedom followed up by letter dated July 5, 2016, and provided Brownstone with a written notice of termination pursuant to the terms of the Services Agreement, which permitted

---

[2] The amended complaint repeatedly references the parties' Services Agreement and the Exhibits thereto, and it frequently quotes portions of those documents. However, Brownstone did not attach a copy of these documents to the amended complaint. In moving to dismiss, Defendant included a copy of the Services Agreement and the Exhibits thereto.

Generally, in considering a motion to dismiss based on Rule 12(b)(6), a district court may not consider matters outside the pleadings. Fed. R. Civ. P. 12(b)(6). Accordingly, the Court is limited to considering the facts as they are alleged in the complaint, anything properly attached thereto and matters of public record. Fed. R. Civ. P. 12(b)(6). However, "[a] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Benefit Guar. Corp., v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Therefore, the Court may properly consider the Services Agreement and its Exhibits because Plaintiff's claims are clearly based on those documents.

4

either party to terminate the Agreement "at any time for any reason by giving the other party thirty (30) days prior written notice." (Id. ¶ 11; see also Ex. A [Doc. No. 8-1] to Def.'s Mem. of Law, Services Agreement, 3, ¶ 6.1.) Brownstone received the written notice of termination on July 7, 2016. (Id.) Relying upon Exhibit A to the Services Agreement, a document entitled "Fee Schedule", Brownstone alleges that after the termination Freedom was still obligated to pay Brownstone a Monthly Draw[3] in the amount of $20,000 for each of the months of June and July, and a pro-rata portion of the August Monthly Draw based on the effective date of the termination. (Id. ¶¶ 6-7, 9-12, 15, 18-20.) Brownstone now claims that Freedom's failure to pay the Monthly Draw constitutes a violation of the SRRA because the Monthly Draw qualifies as a "commission" as defined by the Act. (Pl.'s Am. Compl. ¶¶ 22-29.)

## III. DISCUSSION

Freedom seeks to dismiss Count I of Plaintiff's amended

---

[3] With respect to the Monthly Draw, the "Fee Schedule" provides that Freedom "shall advance $20,000 per month to [Brownstone] against expected earned Consultant Fees. The Monthly Draw shall be distributed on the 1st business day of each month." (Ex. A [Doc. No. 8-1] to Def.'s Mem. of Law, "Fee Schedule" – Exhibit A to the Services Agreement, 7.)

complaint asserting a claim under the SRRA pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted). The Third Circuit has instructed district courts to conduct a two-part analysis in deciding a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

First, a district court "must accept all of the complaint's

well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210-11 (citing Iqbal, 129 S. Ct. at 1949). Second, a district court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211 (citing Iqbal, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." Fowler, 578 F.3d at 211; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S. at 556).

A court need not credit "'bald assertions'" or "'legal conclusions'" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant has the burden of demonstrating that no claim has been presented. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr

Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

IV. **ANALYSIS**

In moving to dismiss Brownstone's SRRA claim, Freedom's primary argument is that any alleged failure to pay the Monthly Draw, does not state a valid claim for unpaid "commissions" under the SRRA. (Def.'s Mem. of Law. [8-1], 5.) Brownstone counters that the Monthly Draws are an advance financed by expected "commissions" that Brownstone is entitled to for June and July because it "worked those months soliciting commercial loans for" Freedom. (Pl.'s Opp'n [Doc. No. 10], 4.)[4]

The New Jersey Sales Representatives' Rights Act provides in pertinent part:

> When a contract between a principal and a sales representative to solicit orders is terminated, the commissions and other compensation earned as a result of the representative relationship and unpaid shall become due and payable within 30 days of the date the contract is terminated or within 30 days of the date commissions are due, whichever is later.

---

[4] Brownstone's opposition to the pending motion includes several exhibits including an affidavit by the President of Brownstone. These documents are outside of the pleadings and cannot be properly considered by the Court on a motion to dismiss. Accordingly, the Court's review here is limited to the amended complaint, the Services Agreement, and the Exhibits thereto for the reasons set forth supra.

8

N.J. Stat. Ann. § 2A:61A-2.  Importantly, the SRRA specifies that the term Commission "means compensation accruing to a sales representative for payment by a principal, earned through the last day on which services were performed by the sales representative, the rate of which is expressed as a percentage of the dollar amount of orders or sales or as a specified amount per order or per sale."  N.J. Stat. Ann. § 2A:61A-1.

To determine whether Brownstone has alleged a claim under the SRRA, the Court must determine whether the compensation terms of the parties' Services Agreement and the attached "Fee Schedule" fall within the definition of a "commission" as set forth by the Act.  The Services Agreement provides that:

> 3.1  <u>Fees</u>.  Consultant [Brownstone] shall be deemed to have earned a fee at time of closing of the loan.  The fees will be based upon the profitability of the sale of the loan into a capital markets/securitization structure for any such borrower referral, and determined in accordance with the attached Fee Schedule.  All fees shall be distributed within 15 business day from the time the fee is earned.

(Ex. A [Doc. No. 8-1] to Def.'s Mem. of Law, Services Agreement, 1, ¶ 3.1.)  More specifically, the "Fee Schedule" defines Brownstone's Consultant Fee as follows:

> [Brownstone] shall be entitled to 12% of realized Net
> Profits from the sale of each referred loan into a
> capital markets/securitization structure (a "Sale").
> Net Profits shall mean the Gross Gain generated from
> a Sale less Expenses comprised of (i) pro rata
> securitization costs, (ii) allocated Client
> administrative costs, and (iii) allocation of direct
> travel and entertainment costs. Expenses shall be
> disclosed to Consultant as they are updated on a
> regular basis.

(Ex. A [Doc. No. 8-1] to Def.'s Mem. of Law, "Fee Schedule" – Exhibit A to the Services Agreement, 7.)

Freedom contends that the language of the Services Agreement and the "Fee Schedule" demonstrates that Brownstone's compensation is not a "commission" as defined by the SRRA because a "commission" covered by the Act is a form of compensation the rate of which is expressed in one of two ways: (1) "'as a percentage of the dollar amount of orders or sales,'" or (2) "'as a specified amount per order or per sale.'" (Def.'s Mem. of Law, 8) (citing N.J. Stat. Ann. § 2A:61A-1). Freedom argues, that neither the Monthly Draw, nor the Consultant Fee which is calculated based on a percentage of Net Profits, fall within this definition. (Def.'s Mem. of Law, 8-11.)

Under New Jersey law, when interpreting "the construction of ... statutes ..., both civil and criminal, words and phrases

10

shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." N.J. Stat. Ann. § 1:1-1. Giving the words and phrases used to define a "commission" under the SRRA their generally accepted meaning, the Court agrees with Freedom that neither the Monthly Draw, nor the Consultant Fee qualify as a "commission" within the meaning of the Act.

Specifically, the Monthly Draw is defined by the parties' "Fee Schedule" as a specified amount of $20,000. This amount is predetermined by the parties' "Fee Schedule", and this number is fixed, and independent of the number of sales of loans referred by Brownstone. By contrast, the SRRA's definition of "commissions" contemplates a form of compensation the calculation of which is derived from, and dependent upon, the work performance of the sales representative. It is true that the Monthly Draw constitutes an advance of "expected earned Consultant Fees," but that is not sufficient to make it a "commission" under the Act. The parties' "Fee Schedule" makes clear that the Monthly Draw was designed to insure cash

11

flow to Brownstone in order to affect additional sales.

More importantly, the Consultant Fee itself, which Brownstone repeatedly calls a "commission",[5] is explicitly defined by both the Services Agreement and the "Fee Schedule" as compensation based on a percentage of net profitability of the sale of the loans referred by Brownstone.  The express language of the SRRA encompasses percentage-based compensation within the definition of a "commission" only where the percentage-base is tied to "the dollar amount of orders or sales[.]"  N.J. Stat. Ann. § 2A:61A-1(a), not for those percentage-based compensations related to profits.  As Freedom correctly points, in drafting statutes like the SRRA, several other state legislatures, including North Carolina, Oklahoma, Maryland, and Ohio, have specifically included in the

---

[5]  At certain points in Plaintiff's amended complaint and opposition to the pending motion, Plaintiff attempts to conflate the distinct concepts of a Monthly Draw and that of a Consultant Fee, and Plaintiff appears to take the position that these are one-in-the-same and qualify as commissions under the SRRA. However, in seeking damages here, the amended complaint clearly relies on the dollar figure set forth in paragraph 20 of the amended complaint.  Therein, Plaintiff unequivocally contends that it is "entitled to $44,667 as payment of the Monthly Draw for June, July, and the first week of August 2016."  (Pl.'s Am. Compl. ¶ 20.)  This dollar figure clearly represents Plaintiff's attempt to collect on the Monthly Draw, as opposed to the Consultant Fee.

definition of "commission" those that are derived from a percentage-base of profits.  See, e.g., N.C. Gen. Stat. Ann. § 66-190(1) (defining commission as "compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the amount of orders, sales, or profits or as a specified amount per order or per sale.); Okla. Stat. Ann. tit. 15, § 676 ("'Commission' means compensation accruing to a person for payment by another person, the rate of which is expressed as a percentage of the dollar amount of orders, sales or profits"); Md. Code Ann., Lab & Empl. § 3-601(b) (defining commission as "compensation that: (1) is due to a sales representative from a principal; and (2) accrues at: (i) a specified amount for each order or sale; or (ii) a rate expressed as a percentage of the dollar amount that a sales representative: 1. takes in orders for the principal; 2. makes in sales for the principal; or 3. earns in profits for the principal.");  Ohio Rev. Code Ann. § 1335.11(A)(1)(" "Commission" means compensation accruing to a person for payment by another person, the rate of which is expressed as a percentage of the dollar amount of orders, sales, or profits.").

Unlike these states, the New Jersey SRRA does not

13

expressly include in the definition of commission, percentage-based compensation derived from profits.  The Court cannot read into the generally accepted meaning of the words and phrases in the current definition, a construction that encompasses a form of compensation that the legislature explicitly left out. Brownstone's attempt to couch the Consultant Fee as a "commission" and to allege its entitlement to the Monthly Draw for expected earned "commissions" as set forth in the amended complaint fails, and Count I must be dismissed.

In light of the dismissal of Count I, which provided the basis for this Court's original jurisdiction over this case pursuant to 28 U.S.C. § 1332, the only remaining claim is Count II.  Count II alleges a state common law claim for breach of contract.  Count II seeks the same $44,667 in unpaid Monthly Draw (Pl.'s Am. Compl. ¶32.) an amount far below the jurisdictional minimum for diversity jurisdiction.[6]  Under Section 1367(c)(3), "[a] district court may decline to exercise supplemental jurisdiction over a claim if 'the district court

---

[6] Although Count II demands treble damages and attorney's fees there are no facts alleged or legal basis specified for an award of such damages in a breach of contract claim based on common law.

has dismissed all claims over which it has original jurisdiction[.]'" Oras v. City of Jersey City, 328 F. App'x 772, 775 (3d Cir. 2009) (citing 28 U.S.C. § 1367(c)(3)).

Moreover, as recognized by the Third Circuit, "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Oras, 328 F. App'x at 775 (citing Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)) (internal quotations omitted) (emphasis in original). In this case, rather than decline the exercise of supplemental jurisdiction sua sponte, the Court will order the parties to show cause and demonstrate how considerations of judicial economy, convenience, and fairness affirmatively justify the exercise of supplemental jurisdiction over Count II of the amended complaint. The parties shall show cause within 20 days of the date of this Opinion and its accompanying Order.

**V. CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss will be granted. An Order and Order to Show Cause consistent with this Opinion will be entered.


Dated: June 30, 2017       s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.